UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CASSIE L..[1]

      Plaintiff,

v.

Case No. 3:20-cv-0287
Magistrate Judge Norah McCann King

COMMISSIONER OF SOCIAL SECURITY,[2]

      Defendant.

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Cassie L. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. This matter is now before the Court, with the consent of the parties*, see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 12, *Defendant's Memorandum in Opposition*, ECF No. 15, *Plaintiff's Reply*, ECF No. 16, and the *Certified Administrative Record*, ECF No 9. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court denies *Plaintiff's Statement of Errors* and affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

I.         **PROCEDURAL HISTORY**

Plaintiff filed her applications for benefits in November 2016, alleging disability due to both physical and mental impairments. R. 247-54.[3] She originally alleged a disability onset date of January 2, 2015, but later amended that date to September 14, 2016.[4] The applications were denied initially and upon reconsideration, and Plaintiff sought a *de novo* hearing before an administrative law judge. R. 148-49. Administrative Law Judge ("ALJ") Gregory G. Kenyon held a hearing on May 14, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 40-72. In a decision dated July 11, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from her amended disability onset date through the date of that decision. R. 16-33. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 23, 2020. R. 1-7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 23, 2022, the case was reassigned to the undersigned. ECF No. 18. The matter is ripe for disposition.

II.        **LEGAL STANDARD**

    A.     **Standard of Review**

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The

---

[3] References to the Certified Administrative Record will be cited, using the pagination in the Certified Administrative Record, as "R. __."
[4] The transcript of the administrative hearing indicates that Plaintiff amended her alleged disability onset date to September 4, 2016. R. 43. However, the ALJ referred in his decision to an amended disability onset date of September 14, 2016. R. 19, 33.

findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other co8ntexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

3

B.      **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof through step four; at step five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e),

4

(f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 29 years old on her amended alleged disability onset date. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since that date. R. 19.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: lumbar and cervical strains, migraine headaches, depression/bipolar disorder, posttraumatic stress disorder (PTSD), and generalized anxiety disorder. R. 19. The ALJ also found that Plaintiff's noncardiac chest pain was not severe. R. 20.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 26.

At step four, the ALJ found that Plaintiff had the RFC to perform medium work subject to various additional postural, environmental, and mental limitations. R. 28. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a circulation sales representative, cashier, license clerk, hotel clerk, cook, and marker. R. 31-32.

At step five, the ALJ found that a significant number of jobs–*i.e.*, approximately 200,000 jobs as a store laborer, approximately 180,00 jobs as a hand packager, and approximately 90,000

jobs as a washer–existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 32-33. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from her amended alleged disability onset date through the date of the decision. R. 33.

Plaintiff argues that the ALJ erred in his evaluation of certain opinions relating to Plaintiff's mental impairments and to related medical and other evidence. She asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings *Plaintiff's Statement of Errors,* ECF No. 12; *Plaintiff's Reply Brief*, ECF No. 16. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief,* ECF No. 15.

## IV. RELEVANT EVIDENCE AND DISCUSSION

Plaintiff began treatment at Eastway Behavioral for bipolar disorder, PTSD, depression, and a personality disorder in June 2016. R. 421-79. On initial assessment, Plaintiff's mood was anxious and irritable; her affect was flat and her intelligence was "average." R. 456. She was prescribed medication and, at a September 2016 office visit, her mood was characterized as "mild mixed," and her affect was "full." R.464. By December 2016, her progress was characterized as "[s]omewhat improved." R. 450. "I am able to sleep more and feeling like I have a clear head." R. 450.

In January 2017, Mary Ann Jones, Ph.D., performed a consultative psychological evaluation of Plaintiff at the request of the state agency. R. 412-20. Plaintiff reported that she had been hospitalized as a juvenile for suicidal ideation and that her PTSD and anxiety keep her from

6

working. R. 414. During the consultative examination, Dr. Jones noted, Plaintiff was cooperative and her conversation was relevant and coherent. R.416. Her demeanor was resigned and dysphoric and her affect was sad. *Id.* She had suicidal ideation but insisted that she would not act on that. *Id*. She reported panic attacks three to four times per week, especially when she must leave the house. *Id*. She also reported hallucinatory experiences and paranoid ideation. R. 417. On clinical examination, Plaintiff was alert and oriented. Dr. Jones estimated that Plaintiff's general intelligence fell within the mild range of mental retardation, although the doctor indicated that Plaintiff "may require an intelligence test." *Id.* Dr. Jones diagnosed bipolar disorder, nos, PTSD, and generalized anxiety disorder, and assessed a GAF of 53, indicating moderate symptoms. R. 419. Because of Plaintiff's reported poor comprehension and memory, and the doctor's informal assessment that Plaintiff was functioning in the mild range of mental retardation, Dr. Jones opined that "there are likely to be limitations in her ability to understand, remember, and carry out instructions in a work setting." *Id*. "[T]here are likely to be limitations in her ability to maintain appropriate attention and concentration and to sustain appropriate persistence and pace in order to perform job tasks." R. 420. In addressing Plaintiff's abilities and limitations in responding appropriately to supervision and coworkers, Dr. Jones stated, "[T]here are likely to be some limitations in her ability to consistently interact appropriately with coworkers and supervisors in a work setting." *Id*. Similarly, according to Dr. Jones, "there are likely to be some limitations in her ability to tolerate the stress associated with normal employment. *Id.*

      In February 2017, Paul Tangeman, Ph.D., reviewed the record on behalf of the state agency and found that the record documented the severe impairments of depressive, bipolar and related disorders, learning disorder, anxiety, and obsessive-compulsive disorder, and trauma-and

7

stressor-related disorder, resulting in no more than "mild" or "moderate" limitations of functioning. R. 77-78, 80-82, 93-94. According to Dr. Tangeman, Plaintiff could engage in simple routine tasks with no fast-paced work and little change with some social limitations. R. 93-94. Denise Rabold, Ph.D., also evaluated the record on behalf of the state agency in April 2017, and agreed with Dr. Tangeman's opinions regarding documented diagnoses, R. 104, and limitations of functioning. R. 107-09.

Plaintiff's treatment at Eastway Behavioral continued and in June 2017, her condition remained "somewhat improved," although she reported that her depression had increased in response to an upcoming child custody hearing. R. 476.

In December 2018, Plaintiff began treatment at South Community Behavioral Health for complaints of depression, anxiety, and "the voices." R. 680. She reported that she was no longer taking medication for her mental conditions. *Id*. On clinical examination, Plaintiff's mood and affect were characterized as "[s]omewhat constricted; less depressed." R. 681. Judgment and insight, orientation, recent and remote memory, and attention and concentration were all within normal limits. *Id*. Medication was again prescribed. R. 681-82. In February, March and April 2019, Plaintiff's therapist Robert Adams, MS/LPC, noted that Plaintiff's mood and affect were euthymic, full, and congruent and her thought processes and orientation were logical and oriented. R. 684, 692, 696, 728.

Notes from LaDonna Ross, CNS, in March 2019 indicate that Plaintiff was "alert and oriented. Client spoke clearly and coherently. Client denies any immediate concerns to address. Client denies sleep and eating concerns. Client states she takes meds as prescribed." R. 698. Findings on clinical examination were all within normal limits. R. 699. In May 2019, Nurse Ross

8

described Plaintiff's mood and affect as "[b]righter, less depressed." R. 731. All findings on mental status exam were again within normal limits. *Id.*

In May 2019, Nurse Ross and Therapist Adams completed a mental impairment questionnaire, R. 723-25, in which they indicated that they had treated Plaintiff since January 2019 for bipolar disorder and PTSD, as a consequence of which Plaintiff was "overwhelmed, unable to handle problems." R. 723. According to Nurse Ross and Therapist Adams, Plaintiff would be off task 20% or more of an average typical work week and would be absent from work more than three times a month as a result of her psychological problems. *Id*. Nurse Ross and Therapist Adams characterized as "marked" or "extreme" Plaintiff's limitations in most areas of mental functioning. R. 724-25.

The ALJ considered all the opinions and medical evidence of record and accorded "little weight" to the opinions of Dr. Jones:

> Her conclusion that the claimant's general level of intelligence fell within the "mild range of mental retardation" can only be mere speculation given that she performed no psychometric testing and also is inconsistent with the claimant's educational history. Though in special education classes, she graduated from high school with a 2.61 GPA and a class rank of 32 of 54, and thereafter performed a variety of skilled and semi-skilled jobs. Despite Dr. Jones' finding the claimant functions within the "mild range of mental retardation," she did not diagnose an intellectual disability. Dr. Jones' narrative assessment of the claimant's mental functioning also is of little use because her finding the claimant is "likely" to have "some limitations" is not sufficiently specific to be of significan[t] use in determining the claimant's mental functional limitations.

R. 22-23 (citations to record omitted).

The ALJ accorded "substantial weight" to the opinions of the state agency reviewing psychologists:

> They had the opportunity to review the record and base their opinions on a review of that record, as well as their field of expertise. The psychologists' findings, i.e. that the claimant retains the mental capacity for simple routine tasks with no fast-

> paced work and little change with some social limitations are consistent with the balance of the record….

R. 23.

> The ALJ accorded "little weight" to the opinions of Nurse Ross and Therapist Adams:

> Licensed professional counselors and advanced practical nurses are not included among the acceptable sources of medical evidence defined in the regulations. Therefore, information provided by such providers does not equal in probative value reports from those medical sources shown as being acceptable such as licensed physicians. Further, Mr. Adams' and Ms. Ross' findings of marked and extreme limitations in nearly every mental functioning area are inconsistent with the objective evidence, as well as the claimant's self-reports which clearly show improvement in her symptoms as discussed in detail herein. While the claimant may have some limitations in comprehension, again, she graduated from high school with a 2.61 GPA and a class rank of 32 of 54, and thereafter performed a variety of skilled and semi-skilled jobs including working a payday loan store. These circumstances are not indicative of listing level cognitive deficits as those imposed by Mr. Adams and Ms. Ross.

R. 24 (citations to regulations and to the record omitted).

Plaintiff complains that the ALJ erred in his evaluation of the opinions of Nurse Ross and Therapist Adams and argues that the ALJ "selectively focus[ed] on isolated improvement during treatment and in conflating it with an ability to perform full-time work activity on a sustained basis." *Plaintiff's Statement of Errors*, ECF No. 12, PageID# 783. This Court disagrees.

In evaluating a claim for disability benefits, an ALJ must consider all medical opinions. 20 C.F.R. §§ 404.1527(c), 416.927(c). However, the regulations governing Plaintiff's applications defined medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). In the absence of a controlling treating medical opinion, as in this case, an ALJ must consider the following factors in deciding the weight to be given to any medical opinion:

the examining relationship, the treatment relationship, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion is with the record as a whole, and other factors that "tend to support or contradict the medical opinion." 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). However, a formulaic recitation of factors is not required. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion permits a claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

Plaintiff contends that the ALJ erred in his evaluation of Dr. Jones' opinions. The ALJ accorded "little weight" to those opinions, finding that those opinions were based on speculation and were inconsistent with the Plaintiff's educational and work history, as well as Dr. Jones' diagnoses, and because her use of the phrase "'likely' to have 'some limitations'" was not sufficiently specific to be of significance. R. 22-23. Plaintiff contends that the ALJ erred in this assessment because the ALJ "failed to show that Dr. Jones' opinions are substantially inconsistent with the treatment record or the assessment of Ross and Adams." *Plaintiff's Statement of Errors*, ECF No. 12, PageID# 786. This Court disagrees. Dr. Jones' opinions that Plaintiff is "likely" to have "some limitations" are, as the ALJ found, unhelpful in evaluating Plaintiff's ability to engage in work-related activities. In any event, the ALJ actually found, based on substantial evidence including the opinions of the state agency reviewing psychologists, that Plaintiff was in fact limited in her ability to work. This Court concludes that the ALJ's assessment of Dr. Jones' opinions complied with the applicable regulation and enjoys substantial support in the record. In short, this claim is without merit.

Plaintiff also challenges the ALJ's evaluation of the opinions expressed by Nurse Ross and Therapist Adams in their May 2019 mental impairment questionnaire. Nurse practitioners and therapists are expressly excluded in the applicable regulations from the category of "acceptable medical sources." 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (2016). Yet, the opinions of those who are not acceptable medical sources "may reflect the source's judgment about some of the same issues addressed in medical opinions from acceptable medical sources." 20 C.F.R. §§ 404.1527(f)(1), 416. 927(f)(1). When considering their opinions, an ALJ may refer to the factors considered in evaluating the opinions of acceptable medical sources, *see* 20 C.F.R. §§ 404.1527(c), 416. 927(c), but need not refer to every such factor. 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1).

In the case presently before the Court, the ALJ summarized in detail the treatment notes of Nurse Ross and Therapist Adams and found that their extremely restrictive opinions as to Plaintiff's ability to engage in work-related activities "are inconsistent with the objective evidence , as well as the claimant's self-reports which clearly show[ ] improvement in her symptoms." R. 24. This evaluation complied with the applicable regulations and, as this Court's own summary of the evidence shows, enjoys substantial support in the record. Therefore, this Court has no authority to re-weigh that evidence.

Finally, Plaintiff argues that the ALJ erred in "suggest[ing] that [Plaintiff] can perform full-time competitive work because she had tried several skilled and semi-skilled jobs in the past." *Id*. This argument is based on a mis-reading of the administrative decision. The ALJ properly referred to Plaintiff's work history, which in fact included skilled and semi-skilled jobs,

as but one factor considered by the ALJ in determining Plaintiff's RFC. R. 24, 30. This claim, too, is without merit.

V.      CONCLUSION

For all these reasons, the Court **DENIES** *Plaintiff's Statement of Errors*, ECF No. 12, and **AFFIRMS** the Commissioner's decision The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).


Date:  June 30, 2022                              *s/Norah McCann King*
                                              NORAH McCANN KING
                                         UNITED STATES MAGISTRATE JUDGE